OLD COLONY TRUST COMPANY, trustee, *vs.* FLORENCE CRYER
RHODES & others.

Plymouth. January 5, 1938. — February 2, 1938.

Present: RUGG, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Trust*, Construction of instrument creating trust. *Devise and Legacy*,
Remainder. *Assignment.*

Under the will of a father establishing in one clause a trust with direction
to the trustee upon the death of the testator's widow to "pay over" a
portion of the fund "as provided in" a later clause, which had pro-
visions in substance creating a trust of the residue of the estate, the
income of which was to be paid to the son for life with power in the
trustee in his discretion seven years after the testator's death to "pay
over and deliver" a part or the whole of the fund to the son, in which
event the trust should terminate *pro tanto* or wholly, and further pro-
visions for distribution of the fund according to circumstances which
should appertain at the son's death before such termination, an
assignment, made to the son by the trustee, before the death of the
testator's widow, and purporting to be in conjunction with an exercise
of his power to terminate the trust under the later clause, was inef-
fectual to pass an interest in the trust created by the earlier clause.

PETITION for instructions, filed in the Probate Court for
the county of Plymouth by the trustee under the seventh
clause of the will of John C. Rhodes, late of Marion, on
May 19, 1937.

After a hearing by *Poland*, J., a decree was entered in-
structing the petitioner to distribute three fourths of the
trust fund held by it under the seventh clause of the will in
disregard of the assignment by the petitioner's predecessor
as trustee, described in the opinion. Florence Cryer Rhodes,
individually and as executrix of the will of John B. Rhodes,
appealed.

*J. M. Bullard*, stated the case.

*R. Wait*, for Florence Cryer Rhodes.

*C. P. Warren*, for Marcus Arnold Rhodes, & *C. M. Roger-son*, for Boston Safe Deposit and Trust Company, executor, filed a brief.

DOLAN, J.   This is a petition for instructions as to the distribution of certain property held in trust by the petitioner, as it is trustee under the seventh clause of the will of John C. Rhodes, who died July 15, 1916, leaving as his only heirs at law a widow, Caroline M. Rhodes, and a son, John B. Rhodes.   He was also survived by a grandnephew, Marcus Arnold Rhodes, who is a respondent in the proceeding, and a grandniece, Nancy Bassett Rhodes Barker, who has since deceased and whose executor is also a respondent.

By the seventh clause of his will the testator gave one third of certain described personal property in trust to pay the net income to his wife for life, and upon her death to pay over three fourths of the trust fund then in the hands of the trustee "as provided in the Ninth Clause of this will." By the eighth clause of the will the testator gave his son John $50,000 out of the remainder of his estate.   In the ninth clause he gave all the rest, residue and remainder of his estate in trust to pay the income to "John" for life, and therein provided as follows: "If at any time after the expiration of a period of seven years from the date of my death said Trustee acting in his sole discretion shall deem it wise and prudent and for the best interests and welfare of my said son, then to pay over and deliver either a part or the whole of said trust fund to my said son . . . in that event as to such part or the whole so paid over and delivered this trust shall terminate, and the property so paid over and delivered shall be and become the absolute property of my said son.   In the exercise of the discretion herein given, said Trustee is directed to use his own judgment as to the wisdom of terminating this trust, either in part or in whole, as herein provided, in view of the conduct and manner of life of my said son and in view of his opinion as to the probability of his making a reasonably prudent use of the property."

Other provisions of the ninth clause are as follows: "(4).

Upon the death of my said son, John B. Rhodes, during the continuance of this trust should his wife Florence Cryer Rhodes survive him one-third of the trust fund then in the hands of my said Trustee shall be paid over to her free and discharged of all trusts. (5). Upon the death of my said son, John B. Rhodes, during the continuance of this trust leaving issue him surviving the remaining two-thirds of the trust fund after paying one-third thereof to his wife should she survive him as above provided, or the whole of said trust fund then remaining in the hands of the said Trustee in case his said wife shall not survive him as above provided, shall remain and continue to be held by my said Trustee until all of the living children of my said son shall reach the age of twenty-one years . . . . (6) Upon the death of my said son John B. Rhodes during the continuance of this trust without issue him surviving then to pay over and deliver two-thirds of the trust fund or so much thereof as shall then remain in case the said wife of my said son survives him as above provided, or the whole of said trust fund then remaining in case the said wife of my said son does not survive him, to Marcus Arnold Rhodes and Nancy Bassett Rhodes, children of my nephew George H. Rhodes and of his late wife Louisa Bassett Rhodes now living in Taunton in said Bristol County." By the twelfth clause the testator subjects the interest of each beneficiary "under the trusts created" by the will to stringent spendthrift provisions as to both income and principal, going so far as to authorize the trustee in the absence of personal receipt from a beneficiary to make payments for the benefit of such beneficiary or for his or her family; with similar power in case of attempted attachment, sequestration, assignment or anticipation by any beneficiary; and also, in such case, if the condition exists at the termination of the trust, to pay over the portion to which the beneficiary affected would otherwise be entitled to some member of the family of such beneficiary.

Oliver Prescott was duly appointed and qualified as trustee under the ninth clause of the will, and, on July 16, 1923, he paid over and delivered to the testator's son the trust estate actually in his possession and executed an in-

strument which was filed in the "Plymouth County Probate Court." The instrument reads as follows: "Whereas by the Seventh Clause of the will of John C. Rhodes, late of Marion, Mass., deceased, a certain Trust Fund was created for the benefit of Caroline M. Rhodes for life, and Whereas it is provided that upon the death of the said Caroline M. Rhodes three-fourths of the Trust Fund created by said Seventh Clause of said will shall be paid over as provided in the Ninth Clause of the said will, and Whereas the said Ninth Clause of said will provided a Trust Fund for the benefit of John B. Rhodes for and during his life, with the provision that the Trustee, after the expiration of a period of seven years from the date of the death of the testator, should have the right, in his discretion, to terminate the Trust created by said Ninth Clause and pay over and deliver a part or the whole of said Trust Fund to the said John B. Rhodes free and discharged of all trusts, and Whereas in accordance with the provisions for termination of the Trust contained in said Clause the Trust was terminated on July 16th, 1923    I, Oliver Prescott, Trustee under the said Ninth Clause of the will of John C. Rhodes, do hereby assign, transfer and set over unto the said John B. Rhodes as part of the said Trust Fund all the right, title and interest which I have as Trustee under the Ninth Clause of the said will in and to the Trust Fund created by the Seventh Clause of said will, the purpose of this document being to vest in the said John B. Rhodes individually the right to receive three-fourths of the Trust Fund created by the said Seventh Clause of said will upon the death of the said Caroline M. Rhodes, and I do hereby authorize and empower the said John B. Rhodes to receive directly in his own name from the Trustee of said Seventh Clause of said will, upon the death of the said Caroline M. Rhodes, all of the interest under said Trust Fund which would otherwise have passed to me as Trustee under the said Ninth Clause of said will."

The testator's son died testate August 18, 1935, leaving no issue. By his will he gave to his wife, Florence, all his property "specifically including . . . all the property of

every name and nature belonging to . . . [him] by virtue of the will of . . . [his] father . . . and the powers exercised by the trustee therein under the seventh and ninth clauses of said will." His wife survived him and is the executrix under his will. The testator's wife, Caroline M. Rhodes, the life beneficiary under clause seven, died March 12, 1937. The probate judge entered a decree instructing the petitioner to distribute three fourths of the trust fund held by it in equal shares to Florence Cryer Rhodes, Marcus Arnold Rhodes and the Boston Safe Deposit and Trust Company, executor of the will of Nancy Bassett Rhodes Barker.

Florence Cryer Rhodes appealed from the decree individually and as executrix of the will of the testator's son. She contends that upon the death of the testator the remainder in the fund involved vested in the trustee under the ninth clause, and passed in interest by the assignment to "John" and by his will to her, and that she is now entitled to possession. The respondents, Marcus A. Rhodes and the trust company, maintain that the fund did not fall into the residuary trust created by clause nine on the death of the life beneficiary, but that it became distributable by the petitioner trustee under the seventh clause, who should look to the ninth clause for enlightenment as to the manner of distribution. The respondent Florence Cryer Rhodes, who for convenience will hereinafter be referred to as the appellant, relies largely on the case of *Smith* v. *Livermore*, 298 Mass. 223, where, at pages 237 and 238, it appears that there was a gift of a trust fund the income of which was to be paid to a life beneficiary with the provision that "At her death said fund shall be distributed in accordance with the residuary clause of this will," and where the court held that the clause, "read in connection with other provisions of the will, makes the fund thereby given, after the death of the life tenant, a part of the residue." We think that case is distinguishable from the present case, as in the former the residuary clause contained a specific provision that the rest and residue passing under it should include "all reversions and remainders." (Page 239.) Moreover, in the present

case, there would be no occasion, should the testator's son predecease the testator's wife, as he did, for the distribution to a trustee under the ninth clause. There was then no longer any possibility of an exercise of the power of the trustee thereunder to pay over and deliver to John, and the fund here involved could be distributed by the petitioner in accordance with the provisions of the ninth clause read in the light of conditions existing when the trust for the testator's wife terminated. In this view we think that the remainder in the trust fund under the seventh clause could not be said to be vested in the trustee under clause nine after the death of John, but that it could only be said to have been vested in that trustee on the death of the testator subject to be divested by the death of John before the testator's wife, when the possibility of the exercise of the discretionary power as to the particular fund would be at an end. Upon the death of John the fund involved was subject to be disposed of at the termination of the trust under which it was held under the then existing conditions, and not under those existing at a prior time. We think that this construction is borne out by the provisions of the discretionary power given under clause nine, the spendthrift clause (12), and the reading of the will as a whole.

The "rule for the construction of wills, briefly stated, is that the intention of the testator is to be ascertained from the whole instrument, attributing due weight to all its language, and then to give effect to that intent unless prevented by some positive rule of law. *Ware* v. *Minot*, 202 Mass. 512, 516. *Temple* v. *Russell*, 251 Mass. 231, 235." *Boston Safe Deposit & Trust Co.* v. *Stratton*, 259 Mass. 465, 470. Throughout the provisions of clause nine the testator speaks consistently of "this trust." The tenth clause of the will directs that all inheritance taxes upon legacies given to the testator's wife by the first and seventh clauses of his will shall be paid out of the principal of the "Trust Fund created for her by the Seventh clause" of his will, and that those upon the legacies given his son under the sixth, eighth and ninth clauses be paid out of the principal of the "Trust Fund created for him by the Ninth clause" of the will. The

eleventh clause, conferring powers of investment on the trustee, refers to the "several trusts created by" the will. In the twelfth clause, which sets up the spendthrift provisions, the testator speaks of "trusts created by this will." Reading all these provisions together we think that the testator regarded the two trusts as separate and distinct, and that in providing that at the termination of the trust under clause seven the fund in question should be distributed in accordance with the provisions of clause nine, he did not intend that the fund under clause seven should fall into the trust under clause nine, unless the provisions of the latter would, in the light of conditions existing at the termination of the trust under clause seven, require that the trustee under clause nine should then be given possession. The testator must be taken to have known that the trustee under clause nine would not be in actual possession of the fund held in trust under clause seven until the death of the life beneficiary. The testator had fixed that time for the termination of the trust under clause seven and for the disposition of the property held thereunder. *Abbott* v. *Williams*, 268 Mass. 275, 283. We are of opinion that when the testator reposed in the trustee under clause nine the discretionary power "to pay over and deliver . . . a part or the whole of said trust fund . . . . And in that event as to such part or the whole so paid over and delivered this trust shall terminate, and the property so paid over and delivered shall be and become the absolute property of my said son," he did not intend that this power should extend to the fund held under clause seven, unless that had actually been paid over to the trustee during the lifetime of John. Until that was done and the trustee in turn exercised his discretionary power to pay over the property to John, it could not become the "absolute property" of John. The strict provisions of the spendthrift clause (12) and the fact that the discretion reposed in the trustee under clause nine was not absolute and uncontrolled, as in *Leverett* v. *Barnwell*, 214 Mass. 105, give weight to this view. The discretion given to the trustee under clause nine could not be exercised arbitrarily. Specific instructions were given to the trustee that, in coming to a determination

to terminate "this trust," he should take into consideration the conduct and manner of life of the testator's son, and the probability of his making a reasonably prudent use of the property.  It has been held that "There is an implication, when even broad powers are conferred, that they are to be exercised with that soundness of judgment which follows from a due appreciation of trust responsibility.  Prudence and reasonableness, not caprice or careless good nature, much less a desire on the part of the trustee to be relieved from trouble or from the possibility of making a foolish investment, furnish the standard of conduct."  *Corkery* v. *Dorsey*, 223 Mass. 97, 101.  Such a discretion should be exercised only after "serious and responsible consideration."  *Boyden* v. *Stevens*, 285 Mass. 176, 180.  Apart, however, from the consideration that it may be doubted if the trustee could assume that an exercise of discretion by him in 1923, which was then prudent as to the property then in his actual possession, would likewise be prudent and discreet at the indeterminate future time when the trust under clause seven would terminate, and the fund in question become available for distribution, it would seem clear that the assignment in 1923 could not operate to confer an absolute property right in the fund in question upon the testator's son.  The words "paid over and delivered" as used by the testator in clause nine, we think, meant such actual payment and delivery as would make the property so "paid over and delivered" that of the son exclusively, and not subject to the rights of others.  The assignment did not effect this result.  Its purpose was not within the intent of the testator, and the fund in question did not pass in interest or possession by the will of the testator's son.

It has been argued that the principal concern of the testator as indicated by his will was for his wife and son.  Under the ninth clause, however, it is clear that if upon the death of his son the trustee had any trust estate then in his possession, the testator did not intend that it should go in its entirety to the appellant.  In that event the testator provided that she should receive but a third of what remained if she survived the son, and that the balance, or the whole

if she did not survive him and he left no issue, should go to the testator's grandnephew and grandniece. At the termination of the trust under clause seven, as it happened, the testator's son had deceased, leaving his wife, Florence, the appellant. The fund now available for distribution under the seventh clause must be disposed of as provided in the ninth clause, read in the light of the occurrences just referred to. Thus read it is distributable by the petitioner trustee under clause seven, as directed in the decree of the Probate Court. Costs and expenses, as between solicitor and client, are to be in the discretion of the Probate Court.

*Decree affirmed.*