ARTHUR LYMAN & another, trustees, *vs.* WILLIAM D. SOHIER & others.

Suffolk.     December 13, 1928. — January 4, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Devise and Legacy*, Construction of particular phrase, Lapsed legacy, Construction against intestacy. *Trust*, Construction of instrument creating trust. *Words*, "Revert to my estate," "My estate."

A will, made in 1859, contained only a residuary clause leaving all the testator's property in trust to be held in six equal shares for the benefit of his six children, each of whom, excepting a daughter, was given a testamentary power of appointment. At different times in the period from 1864 to 1873, six codicils were made. After the death of the daughter, he executed two codicils, in the later one directing in part that the income of the capital which would have accrued to the daughter be paid to her children, and, "on the death of either of said children, one-third part of said capital be paid to his or her issue and in default of such issue shall revert to my estate." There were then three children of the deceased daughter, who survived the testator. One of such children died without issue many years later, another of the children and the issue of the third surviving him. The testator in several instances in the will and the codicils used the expression "my estate." On the question of the distribution of the share, the income of which had been paid to the testator's grandchild who had died without issue, it was *held*, that

(1) The testator's intention, if shown by the words he used and not contrary to law, must govern the interpretation of the words "revert to my estate";

(2) An interpretation of the will resulting in partial intestacy should not be adopted since it was not required by the will; the testator's purpose was to devise and bequeath everything;

(3) The words "my estate" did not mean "my heirs," and the testator did not intend by the words "revert to my estate" that the share in question should be distributed to his heirs at law at the time of his death;

(4) The residuary trust fund was not to be differentiated from the testator's "estate"; and the words "my estate" whenever used meant such trust fund;

(5) The gift to the grandchild who had died without issue did not lapse;

(6) The last codicil did not show that the entire share in question should be divided between the trust fund held for the benefit of the surviving child of the deceased daughter and the issue of the other deceased child of such daughter;

(7) The proper distribution of such share was to divide it equally among the six trusts created by the will, one sixth portion thereof to be divided equally between the trust fund held for the benefit of the daughter's surviving child and the issue of her other deceased child.

PETITIONS, filed in the Probate Court for the county of Suffolk by the trustees under the will of John A. Lowell, late of Boston, for the allowance of certain of their accounts.

The petitions were heard by *Dolan*, J., upon an agreed statement of facts. Material facts, portions of the testator's will and codicils, and a decree entered by order of the judge are described in the opinion. The trustees and certain beneficiaries of the trust appealed.

*C. F. Dutch*, (*F. Fish* with him,) for the petitioners.

*E. H. Abbot*, (*A. Wheeler* with him,) for the respondents, living issue of Susan Sohier, and for guardian *ad litem*.

*H. H. Bundy*, for the executor of the will of Elizabeth Sohier.

CARROLL, J. This case is before us on appeals from a decree of the Probate Court allowing, in part, the accounts of the trustees under the will of John A. Lowell, deceased, and modifying the accounts, in part.

The testator died October 31, 1881. His will, executed May 23, 1859, consisted of a residuary clause only. It provided: "After the payment of all my just debts and of all lawful charges against my estate, I give, devise and bequeath all the rest residue and remainder of my estate and property

of whatsoever nature" in trust, which trust, after providing for his wife, who predeceased him, was to be held in six equal shares for his six children. A testamentary power of disposition was given to all his children with the exception of his daughter Susan, who died June 9, 1868. On May 28, 1870, the testator made a fourth codicil. At this time three children of Susan were living, Elizabeth Sohier, Alice De V. Sohier and William D. Sohier. This fourth codicil provided that the income and eventually the principal that would have enured to his daughter Susan were to be paid to her children; and if his grandson William Davis Sohier should die under age and unmarried his share was to go to his sisters Elizabeth and Alice Sohier. By the sixth codicil, executed July 16, 1873, the testator provided: "I hereby direct that the income only of the capital that would have accrued to my daughter Susan be paid to her children; and that on the death of either of said children, one-third part of said capital be paid to his or her issue and in default of such issue shall revert to my estate." The three children of Susan (William D. Sohier, Elizabeth Sohier and Alice De V. [Sohier] Clarke) were alive at the death of the testator. Elizabeth Sohier died on November 9, 1926, leaving no issue. Her brother, William D. Sohier, and the issue of Alice De V. Clarke survived her. The question in the case is the distribution of the share of the principal, the income of which had been Elizabeth's during her life.

The trustees interpreted the will and these six codicils, particularly the words "revert to my estate" in the sixth codicil, to mean that the share of the principal of which Elizabeth had had the income during her life on her death without issue should be added to the entire trust estate created by the residuary clause of the will and should be made subject to all of its terms; and accordingly they distributed that share equally among the six trusts created by the residuary clause, and divided into two parts the one sixth portion thereof set aside for the benefit of issue of Susan, retaining one half of that one sixth in a trust fund for the benefit of William D. Sohier, and distributing the other half equally among the issue of Alice De V. Clarke.

The allowance of the trustees' accounts showing this distribution was opposed by the executor of the will of Elizabeth Sohier, by the living issue of Susan Sohier, and by the guardian *ad litem* who had been appointed to represent the interests of persons unborn and unascertained. The contention of the living issue of Susan and the guardian *ad litem* was that the share of which Elizabeth had had the income should be added to the particular trust created for the benefit of Susan's children and their issue. The executor of the will of Elizabeth Sohier contends that that share should be distributed to the heirs at law of the testator to be determined as of the date of his death. The Probate Court ruled in accordance with the contention of the executor of the will of Elizabeth Sohier, and a decree was entered amending the trustees' accounts. The living issue of Susan, the guardian *ad litem*, and the trustees under the will of John A. Lowell appealed.

The controlling question is the meaning to be given to the words "revert to my estate" in the sixth codicil. To discover the meaning to be attached to the words "revert to my estate," we must be governed by the testator's intention. That intention, if shown by the words used, is to govern if it is not contrary to some rule of law. *Boston Safe Deposit & Trust Co.* v. *Blanchard,* 196 Mass. 35, 38. *Security Trust Co. of Lynn* v. *Boyce,* 257 Mass. 586.

The construction adopted by the Probate Court that "revert to my estate" means "should be distributed to the heirs-at-law of the testator . . . as of the date of his death" results either in a distribution to the heirs at law under the will, as the executor of the will of Elizabeth contends, or it results in a partial intestacy. Both of these results would be contrary to the testator's intent as shown by the will itself.

John A. Lowell, the testator, did not intend to die intestate. As early as 1859 he made the will in question; from time to time he made six codicils, the first one in 1864 and the sixth in 1873. He anticipated many contingencies and intended to provide for a complete distribution of his property. Subject only to the payment of debts, he gave "all the rest residue and remainder of my estate" in trust.

His purpose as shown by his words was to devise and bequeath everything. It is well settled that a construction of a will resulting in intestacy is not to be adopted unless plainly required; and it is to be presumed that when a will is made the testator intended a disposition of all his property and did not intend to leave an intestate estate. *Hedge* v. *State Street Trust Co.* 251 Mass. 410. In the third paragraph of the will, the testator provided that in the division of "my estate" allowance was to be made for advances to his children; and in the first codicil he again uses these words, directing that if the nine tenths of the net annual income and produce "of my estate" payable to his wife shall in any one year exceed $20,000, the trustees were to pay to each of his children one sixth part of such excess. He referred to the residuary trust fund when in the third paragraph of the will and in the first codicil he spoke of "my estate"; the natural meaning of these words as used by the testator was the residuary trust fund; and in the sixth codicil also he referred to this fund. No property passed as intestate to the next of kin. All of the estate including the gift under the sixth codicil went into the trust and is to be distributed according to its provisions.

We can discover nothing in the language of the sixth codicil indicating that the testator intended to give the one third part of the capital to his heirs at law, thus differentiating "between his estate and that part of his estate constituting the trust fund," as argued by the executor of the will of Elizabeth Sohier. Nor did the gift lapse. It has been held that lapsed or void legacies in the residuary clause of a will pass under the law of intestacy. *Worcester Trust Co.* v. *Turner*, 210 Mass. 115, and cases cited. But this rule is not applicable here because the share did not lapse: it was directed that it should revert and become a part of the estate which had been disposed of by the will. Nor do the words "my estate" mean "my heirs." If the testator intended that the share should revert to his heirs he could easily have said so. But he did not say this. He clearly stated it was to revert as he directed; he did not make a gift to his heirs.

The contention of the guardian *ad litem* and the living issue of Susan Sohier, that the share of which Elizabeth had had the income should be distributed one half to the trust for William D. Sohier and one half to the issue of Alice De V. Clarke, cannot be sustained. This construction of the sixth codicil loses sight of the word "revert." The share in question would not revert under this construction, and the words "my estate" would be restricted to Susan's share of "my estate." The argument of the living issue is based on the proposition that the testator intended an equality of division. Although reference is made to equal shares to be given the testator's children, there was no equality in the manner of treatment of the gifts, for five of the testator's children were given testamentary powers of disposition and if no appointment was exercised the share of each was to go to his or her issue "absolutely and in fee." Susan, however, had no power of appointment, and the income only of the capital was to be paid to her children under the sixth codicil. Under the fourth codicil the share of Susan's son William D. Sohier was to be treated differently from the shares going to his sisters. We do not think that *Miller* v. *Idaho Industrial Institution*, 222 Mass. 188, *Manning* v. *Manning*, 229 Mass. 527, *Saucier* v. *Saucier*, 256 Mass. 107, relied on by the guardian *ad litem* and the living issue of Susan Sohier, support their contention in this respect.

The trustees properly decided that that portion of the principal, thus to be distributed on the death of Elizabeth among the six trusts established by the residuary clause of the will, which accrued for the benefit of the issue of Susan, should be divided equally and one half be held in trust for the benefit of William D. Sohier and the other half divided among the issue of Alice De V. Clarke. The gift to the children of Susan was a gift to a class. The testator had in mind a group or class and not the individuals in the class. The three children of Susan were known to the testator by name, but they were not named in the sixth codicil. *Meserve* v. *Haak*, 191 Mass. 220. *Dexter* v. *Attorney General*, 224 Mass. 215.

It follows that the construction placed on the will of

·John A. Lowell by the trustees was correct, and the decree of the Probate Court should be modified accordingly. Costs as between solicitor and client are to be in the discretion of the Probate Court.

*Ordered accordingly.*