ALONZO P. WEEKS & another, trustees, *vs.* ROBERT MORRIS PIERCE & others.

Middlesex.     February 5, 1932. — April 22, 1932.

Present: RUGG, C.J., CROSBY, WAIT, & FIELD, JJ.

*Trust,* Construction of instrument creating trust. *Devise and Legacy. Evidence,* Extrinsic affecting writing.

A testator, who died leaving a son and a daughter surviving him, by his will made certain specific bequests, including substantial bequests to his son and daughter, and then established a trust, with a provision requiring that annuities of $300 each be paid during the respective lives of three persons; a provision that, in the event of a distribution in whole or in part "as hereinafter provided," a sum should be reserved adequate "to produce an annual net income sufficient to pay said annuities and also to pay said bequests payable out of the principal of my said estate. Any portion of the same not required for the aforesaid purposes is to fall into the residue of my estate and be disposed of as hereinafter provided"; and further provisions that the daughter be paid "two undivided third parts of the remaining net income"; that she should have the use of the testator's real estate in his home town and power to dispose by her will of $50,000 of the principal; that the son should have "one undivided third part of the net income of my said estate remaining after the bequests and annuities aforesaid preceding that to" the daughter; that on his death his widow should receive $3,000 annually during her life and $10,000 should be divided equally among his children until the youngest should reach the age of twenty-one years, when $100,000 of the principal should be divided equally among the children and issue of the son

living at his decease "according to the right of representation"; that upon the daughter's death said real estate should be given to the testator's home town for a hospital and park and an annual income of $3,000 be paid the town for the hospital's maintenance forever, a sum adequate to produce such sum to be reserved by the trustees from the principal. There was the following residue clause: "All the rest, residue and remainder of my estate, including all the sums reserved to support the several foregoing annuities and bequests and not expended therein, I give, devise and bequeath in equal proportionate parts to" certain named charities. After the death of the daughter, the trustees reappraised the personal estate, set aside $22,000 to pay the $300 annuities; one third of the remaining personal property, the income of which was paid to the son; and from the remaining two thirds paid the $50,000 required by an exercise by the daughter of the power given her and provided for the payment of the $3,000 annually to the town. There was also income from real estate in another State, and a surplus of income of about $20,000 during a period of years accumulated beyond the needs of the annuities and the payment to the town. Upon a petition by the trustees for instructions, the son claimed such surplus as legatee and next of kin of his father and by reason of an assignment from the residuary legatees under the will of his sister; and the charities contended that, after the making of proper reservations, there should be a partial distribution to them of principal and surplus income. *Held,* that

(1) The will not disclosing an intention of the testator that there was to be a physical segregation of assets, or that the amounts to become due after the death of the son were to be paid solely from the sum set aside for his benefit during his lifetime, the entire remaining estate for the present at least should be held as security for the stated payments of income and principal to the widow and issue of the son;

(2) One third of the surplus income from the $22,000 fund should be paid to the son;

(3) The surplus income was not intestate property, but eventually would become part of the residue as described in the residue clause;

(4) It not yet appearing that there would be sufficient estate to satisfy the provisions for the widow and issue of the son, there should be no present distribution of the residue;

(5) The language of the will was free from ambiguity, and parol evidence respecting the anticipations of the testator as to the sufficiency of his estate for certain purposes was inadmissible.

PETITION, filed in the Probate Court for the county of Middlesex on November 21, 1927, and afterwards amended, by trustees under the will of John H. Pierce, late of Lincoln, for instructions.

A guardian *ad litem* was appointed "as the next friend of all persons not ascertained, or not in being, who are or may become interested in said estate."

The petition was heard by *Harris*, J., a stenographer having been appointed under G. L. c. 215, § 18, as amended.

Among the specific bequests in the will of the testator, was the following:

"To my son, Robert Morris Pierce of the City of New York, I give and bequeath the sum of One Hundred Thousand dollars ($100,000) out of which bequest are to be first paid all notes signed or endorsed by him and owned by me at the time of my decease, with interest; also all notes signed or endorsed by the Languages Printing Company of New Jersey and owned by me at the time of my decease, with interest; and also all notes signed or endorsed either by said Robert Morris Pierce or by said Languages Printing Company of New Jersey and held in trust for me at the time of my decease, with interest. Upon settlement of said bequest the balance if any above said indebtedness is to be paid to my said son in money.

"I have already paid to and for the benefit of my said son Robert Morris Pierce certain large sums which are not included in the indebtedness aforesaid and I have therefore granted to his sister Elsie Pierce a greater interest in my estate than to my said son."

There was but one witness at the hearing, Elihu G. Loomis, Esquire, one of the trustees. Besides facts stated in the opinion, it appeared from his testimony that from the real estate in New York there had been an income for seventeen years of about $5,000 a year; that the real estate was not divided at the time of the division made by the trustees following the death of the testator's daughter Elsie, as described in the opinion; that the trustees were adding to the "Main Trust" described in the opinion the income from that real estate which made a yield of income annually of about $5,000 more than was required; and that the resulting surplus of income at the time of the hearing, (June, 1931) and respecting which instructions were asked, was about $20,000. Other material facts are stated in the opinion.

The judge made the following rulings:

"1. That the trust, according to the provisions of the

will, cannot be entirely terminated until Robert Morris Pierce's youngest child surviving him attains his majority, when the sum of $100,000 is to be divided among all his surviving children, nor can it be terminated until the decease of the widow, if any, of said Robert Morris Pierce if she survives his children.

"2. That in order to secure the payment of the annuity of $3,000 to the widow, if any, of Robert Morris Pierce, and the annuity of $10,000 and legacy of $100,000 to his surviving children, if any, the trust fund should remain unimpaired, and that no distribution of principal should be made to the seven charities who are the residuary legatees and devisees until the majority of Robert M. Pierce's youngest surviving child, or the death of his widow, whichever event last may happen, unless it shall hereafter appear that partial distribution can be made without endangering the security of said annuities and bequest.

"3. That the bequests to the seven charitable organizations was the residue of the principal only remaining after the gifts to the widow and surviving children of Robert M. Pierce and to the Inhabitants of Lincoln, and did not include income of which no disposition was made by the will after the death of a life beneficiary during the continuance of the trust.

"4. That the legacy of $100,000 outright, less deductions, and the income of one third of the trust estate to Robert, and two thirds of the income of said trust estate, with the power of appointment over $50,000 at her death to Elsie, were intended by the testator as final and complete provisions for each of said children; and that, neither expressly nor by implication, did he confer any right to any portion of the principal or income on the survivor of said children.

"5. That two thirds of the income accruing upon said trust estate, after the reservation from the principal thereof of a sum sufficient to produce an annual income of $3,000 for the benefit of the Inhabitants of Lincoln, was not disposed of by the will of said testator in the event of the decease of Elsie Pierce in the lifetime of Robert Morris

Pierce, either expressly or by implication, and such income, as well as any surplus of income accruing from funds set aside for the payment of annuities, in excess of the amount of said annuities, must pass as intestate estate to be distributed by the executor of said will in accordance with the statutes regulating the distribution of intestate estates.

"6. That the trustees should reserve from the principal of the estate a sum sufficient in their judgment to produce an annual income of $3,000 for the benefit of the Inhabitants of Lincoln, and that the entire two thirds of income, from and after the death of Elsie, less the income accrued on the sum reserved as aforesaid, should be paid over to the executor of the will of said testator to be distributed by him as intestate estate until the final termination of the trust."

The final decree described in the opinion was entered. The guardian *ad litem* and all the seven charities named in the residuary clause of the will appealed.

*H. B. Patrick*, stated the case.

*J. N. Clark*, for Boston Dispensary.

*A. J. Plummer*, for guardian *ad litem*.

*L. Wheeler*, for Robert Morris Pierce and others.

*C. B. Barnes, Jr.*, for Boston Provident Association, submitted a brief.

*E. Hutchins*, for Boston Associated Charities, submitted a brief.

*F. S. Moulton*, for Boston Floating Hospital, submitted a brief.

*S. R. Wrightington*, for New England Hospital for Women and Children, submitted a brief.

*H. M. Williams & W. F. Krayer*, for Children's Mission to Children, submitted a brief.

*C. H. Lutton*, for Trustees of Lawrence Academy at Groton, submitted a brief.

CROSBY, J. This is a petition in equity, filed by the trustees under the will of John H. Pierce, praying instructions with reference to a present distribution of a portion of the principal of the trust to the residuary legatees, and with reference to certain accumulated income. The will and a

codicil are printed in the record.   After making several
specific bequests, including a gift to his daughter, Elsie
Pierce, the testator gave all the rest, residue and remainder
of his estate to trustees upon the following trusts: (1) an
annuity of $300 a year to each of three persons; (2) "And
in the event of the distribution of the whole or any part
of the principal of said trust fund as hereinafter provided,
I direct my said trustees to first reserve a sum adequate
in their judgment to produce an annual net income suf-
ficient to pay said annuities and also to pay said bequests
payable out of the principal of my said estate.   Any por-
tion of the same not required for the aforesaid purposes
is to fall into the residue of my estate and be disposed
of as hereinafter provided"; (3) to pay to the testator's
daughter "two undivided third parts of the remaining net
income" of the estate in quarterly payments, and also to
give her the use and occupation of his homestead estate
and of all his real estate in the town of Lincoln for the term
of her natural life.   In the event of her decease testate,
then to pay over a sum not exceeding $50,000 out of the
principal of the trust estate to such persons as said daughter
by her last will shall devise, bequeath and appoint; (4) to
pay to the testator's son, Robert, "one undivided third part
of the net income of my said estate remaining after the
bequests and annuities aforesaid preceding that to Elsie
Pierce in equal quarterly payments for and during the term
of his natural life . . ."; (5) upon the death of his son,
leaving a widow, to pay her $3,000 a year during the term
of her life, and annually to divide $10,000 equally among
the children of Robert living at his decease until the youngest
child shall have attained the age of twenty-one years, and
thereupon to divide the sum of $100,000 of the principal
of the estate equally among the children or issue of Robert
living at his decease "according to the right of represen-
tation"; (6) upon the death of the testator's daughter he
gave his real estate in the town of Lincoln to the inhabitants
of that town, and in addition thereto an annual income of
$3,000 for the maintenance of the same to be used for a
hospital and park for the use and enjoyment of the in-

habitants of the town forever. "A sum requisite in the judgment of my said trustees to produce said annual income of Three thousand dollars is to be reserved by my said trustees and their successors out of the principal of my estate and invested by them in accordance with the rules laid down in this will, and the income paid to the Inhabitants of Lincoln in equal quarterly payments forever"; (7) "All the rest, residue and remainder of my estate, including all the sums reserved to support the several foregoing annuities and bequests and not expended therein, I give, devise and bequeath in equal proportionate parts to" seven named charities, the principal to be invested and the income thereof to be expended for the general uses and purposes of said charities.

The testator's daughter died in 1926, and by her will exercised the power of appointment. The trustees thereafter had a reappraisal of the personal estate, and set aside $22,000 to support the three annuities of $300 each, and then divided the remainder of the personal property into two parts. One part consisted of one third of the remaining personal property, the income from which has been paid to the testator's son. From the second part, consisting of two thirds of the remaining personal property and termed by the trustees the "Main Trust," was paid $50,000 to Elsie's appointee, and the remainder of the two-thirds fund, approximately $64,000, was considered as set apart for the purpose of providing for the payment of the $3,000 annually to the inhabitants of Lincoln.

It appears that from the sums set apart for the payment of the several amounts there has been a surplus of income. One third of the surplus income from the $22,000 fund, and one third of the income from real estate in New York which belongs to the estate and never has been divided, have been paid to Robert. Two thirds of the surplus income from the $22,000 fund, the entire surplus income from the $64,000 fund, and two thirds of the income from the New York real estate have been accumulated. According to the petition, there remained in the hands of the trus-

tees on July 15, 1927, a balance of income amounting to $5,139.24.

The decree of the Probate Court instructed the petitioners not to make any distribution of principal to the charities who are the residuary legatees "until the youngest surviving child of said Robert Morris Pierce shall have attained the age of twenty-one years or until the death of the widow, if any, of said Robert Morris Pierce, whichever event last may happen, or until the further order of this court . . . ." The trustees were further instructed and directed to pay to Robert in his several capacities, namely, (1) as legatee under the will, (2) as one of the two heirs-at-law and next of kin of the testator, and (3) as assignee of the residuary legatees of Elsie Pierce, who was the other heir-at-law and next of kin of the testator, in regular quarterly payments during his life, the entire net income of said estate, including accumulations of income and income thereon, accruing upon said estate from and after the death of Elsie Pierce, after reserving a sum sufficient to secure the payment of all the annuities and bequests. They were further instructed and directed to pay to Robert quarterly during his life all the surplus income, if any, accruing from the sums reserved to pay the annuities. The guardian *ad litem* and the seven charities named in the residuary clause of the will appealed from the decree.

1. The first question of law presented by the record for decision is whether or not any of the principal of the trust should be distributed at this time. It is a well settled rule that specific gifts in a will are to be paid before any distribution is made to residuary legatees. *Treadwell* v. *Cordis*, 5 Gray, 341, 348, 352, 358. *Richardson* v. *Hall*, 124 Mass. 228, 233, 234. *Porter* v. *Howe*, 173 Mass. 521, 526. *Old Colony Trust Co.* v. *Smith*, 266 Mass. 500, 501. The only gifts that can possibly be said to be specifically unprovided for are those to Robert's wife and children, which are payable on the death of Robert. It is the contention of counsel for the charities named in the residuary clause that it was the intention of the testator, as shown by the language

of the will, that these gifts should be paid out of the one third of the personal estate reserved on the books of the trustees for the payment of Robert's interest.   But it is by no means certain that the one third of the principal so reserved will be sufficient to pay the annuities amounting to $13,000 and the $100,000 bequest which are to become payable in the future, especially if Robert's widow survives after his youngest child becomes twenty-one years of age. The present case is entirely different from that of *Williams* v. *Thacher*, 186 Mass. 293, and *Welch* v. *Episcopal Theological School*, 189 Mass. 108, where a partial distribution was ordered before the termination of the trust.   See also *Sears* v. *Hardy*, 120 Mass. 524, and *Sears* v. *Choate*, 146 Mass. 395, which are also distinguishable in their facts from the case at bar.   There is no doubt as to the power of this court entirely to terminate a trust, or to terminate it as to certain property and continue it as to other in a proper case.   Unless, therefore, it is plain that it was the intention of the testator from the words of the will that there was to be a physical segregation of assets, and that the amounts to become due after the death of Robert are to be paid solely from the sum set aside for his benefit during his lifetime, there can be no distribution of any of the principal at this time.   To construe the will differently would require us to disregard the testator's intention as expressed by language that seems to be certain.

The will provides that the trustees are to pay to Robert "one undivided third part of the net income of my said estate remaining after the bequests and annuities aforesaid preceding that to Elsie Pierce . . . for and during the term of his natural life . . . ."   It further provides that upon the decease of Robert leaving a widow living at his decease, "then to pay over the sum of Three Thousand dollars . . . per year . . . to the widow . . . for and during the term of her natural life," and that upon the death of Robert $10,000 per year is to be divided among his children.   It is not specified that either of these last two bequests is to be paid out of any particular fund or part of the estate.   The bequest of $100,000 to the children of Robert is to be paid

"out of the principal of my estate." There is nothing to indicate that any sums are to be set apart for the payment of these bequests. In fact it is a reasonable inference that no sums are to be set aside, for in other parts of the will the testator showed that he well knew how to make a segregation of assets when he desired to do so, and the omission to do so indicates that, with reference to these gifts, the entire remaining estate should be held as security for their payment.

It cannot rightly be held that there should be a segregation of any part of the trust fund in the absence of a clear intention to that effect on the part of the testator. He seems to have been a man of intelligence whose will expresses clearly the disposition which he desired to make of his entire estate. The fact that the trustees have reserved one third of the personal estate on their books cannot affect the intention of the testator as expressed by his will. *Parkhurst* v. *Ginn*, 228 Mass. 159, 168. *Renwick* v. *Macomber*, 225 Mass. 380, 385, and cases cited. We find no intention expressed in the will that the gifts payable on Robert's death are to be paid only out of one third of the principal. It follows that the trustees cannot be so instructed. It is plain, therefore, that there should be no distribution of principal to the seven charities at this time.

2. The second question is whether or not the accumulated income from the estate not needed for the payment of any legacies now due should be distributed either to the charities, as a part of the residue of the estate, or to Robert, the next of kin, as intestate property. It appears from the report and from the testimony of one of the trustees that the trustees have been paying to Robert the income from one third of the total principal remaining at the death of Elsie, after first setting aside $22,000 to pay annuities given before the bequest to Elsie, one third of the income from the New York real estate, and one third of the surplus income from the $22,000 annuity fund.

It appears that Robert is now receiving the income from one third of the principal, which was set aside for him by the trustees upon the death of Elsie. Whether or not

Robert should receive one third of the surplus income from the $22,000 fund set up to provide for the three annuities depends upon whether the annuities for which the fund was directed to be set aside are gifts "preceding that to Elsie." Although there are different possible interpretations of the language used by the testator, we are of opinion that the true construction is that Robert should receive one third of the surplus income received from the $22,000 fund. The direction to set aside a sum to pay the annuities is only in the event of the "distribution of the whole or any part of the principal of said trust fund as hereinafter provided." It is manifest that this means only upon the death of Elsie or Robert. It results that the surplus income from the $22,000 fund should be divided into thirds, one of which is to be paid to Robert, and the remaining two thirds are to be disposed of as hereinafter directed.

The term "surplus income," hereafter referred to, includes two thirds of the surplus income from the $22,000 fund, all of the surplus income from the $64,000 fund, and two thirds of the total net income from the New York real estate.

"The general presumption is that the testator intended to dispose of his entire estate and not to die intestate as to any part of it . . . . And the intention of the testator is to be ascertained from a consideration of the provisions of the will read together, and not from isolated portions." *Gardiner* v. *Pelton*, 260 Mass. 577, 582. *Towne* v. *Weston*, 132 Mass. 513. *Jones* v. *Gane*, 205 Mass. 37, 43. The question is whether there is any language in the will that shows that the surplus income should not become a part of the residue. We find nothing to that effect, and are of opinion that surplus income is not intestate property, but is a part of the trust property, and is eventually to be distributed in accordance with the residuary clause of the will. *Brown* v. *Wright*, 168 Mass. 506. *Welch* v. *Hill*, 218 Mass. 327. *Old Colony Trust Co.* v. *Forsyth Dental Infirmary for Children*, 271 Mass. 511. The residuary clause reads as follows: "All the rest, residue and remainder of my estate, including all the sums reserved to support the several foregoing annu-

ities and bequests and not expended therein, I give, devise and bequeath in equal proportionate parts" to the seven named charities. It is apparent from this clause, and from the whole will, that the testator did not intend that any of his property should be disposed of as intestate property. If without the clause "including all the sums reserved to support the several foregoing annuities and bequests and not expended therein," the surplus income would fall into the residue as indicated by the cases previously cited, the presence of that clause does not exclude surplus income from the residue. The cases of *Sears* v. *Hardy*, 120 Mass. 524, and *Loring* v. *Dexter*, 256 Mass. 273, and *Abbott* v. *Williams*, 268 Mass. 275, are distinguishable from the case at bar.

Although this surplus income will eventually become a part of the residue, it does not follow that it should be distributed at the present time. The same rules apply as in the case of the principal hereinbefore set forth. Notwithstanding the $100,000 given to Robert's children after the death of Robert is directed to be paid out of principal, and assuming without deciding that the surplus income could not be used to satisfy this bequest, there is no direction as to the source from which the annuities to Robert's wife and children, amounting to $13,000 yearly, are to be paid. As it is not certain that there will be a sufficient sum out of the estate to pay these gifts there can be no distribution of residue at this time. The surplus income should be retained by the trustees and kept separate from the principal to make sure that there will be sufficient assets of the estate to pay these annuities. See *Welch* v. *Hill*, 218 Mass. 327, 329; *Porter* v. *Howe*, 173 Mass. 521; *Old Colony Trust Co.* v. *Smith*, 266 Mass. 500.

3. The only other question for decision relates to the admissibility of certain evidence offered in the Probate Court by counsel for the Boston Provident Association, one of the respondents, and excluded by the judge. This respondent offered to prove by one of the trustees "that the testator, at the time the will was drawn, anticipated that he had a large enough estate to cover the payment to his daughter's

appointee and to the inhabitants of Lincoln out of two thirds of the residue of the trust created in the will and that he anticipated that the one third from which Robert received a life income would be sufficient to pay his children their legacies and his widow her annuity." This offer was excluded subject to the respondent's exception. We assume that the offer of proof related to a conversation which the witness had with the testator respecting his will. The language of the will is free from ambiguity, it speaks for itself, it cannot be changed or modified by statements made by the testator as to his intentions or what he "anticipated" respecting the carrying out of its provisions. What he may have intended or anticipated is to be gathered from the will itself in the light of the contemporaneous circumstances. *Denfield, petitioner,* 156 Mass. 265. *Gould* v. *Chamberlain,* 184 Mass. 115, 121. *Child* v. *Child,* 185 Mass. 376. *Lathrop* v. *Merrill,* 207 Mass. 6. *Moffatt* v. *Heon,* 242 Mass. 201, 205, and cases cited.

It results that the decree should be modified by directing that two thirds of the surplus income from the $22,000 fund, the entire surplus income from the $64,000 fund, and two thirds of the total income from the New York real estate, be accumulated and held under a separate account until after the death of Robert's widow, and until Robert's youngest child reaches the age of twenty-one years, at which time the accumulated income, if any, together with the unexpended principal, should be distributed to the seven charities in accordance with the terms of the will; as so modified the decree is to be affirmed. Costs as between solicitor and client are allowed to be paid out of the fund; the amount thereof to be determined by a judge of the Probate Court.

*Ordered accordingly.*