SPRINGFIELD SAFE DEPOSIT AND TRUST COMPANY, trustee,
*vs.* ELLEN V. FRIELE & others.

Hampshire.     September 20, 1939. — October 27, 1939.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Probate Court*, Findings by judge, Appeal.   *Trust*, Construction of instrument creating trust, Distribution.

Upon appeal, a decree of a Probate Court, without a report of evidence and without other finding of fact, that "after a full hearing" the court "found" "that it was the intention of the testator, as evidenced by his will," that certain payments should be made by a trustee, was construed to mean that the sole basis for the judge's determination as to the intention of the testator was to be discovered by an examination of the will; such determination was reviewable by this court.

Under a will placing the residue of the estate in trust to pay annuities to four designated persons and providing that, "after the termination of all the annuities by death or otherwise," the "residue" should be given to a charity, the trustee, after the death of one annuitant, was instructed in substance not to pay surplus income then or thereafter accumulated to the charity until the termination of all the annuities.

PETITION, filed in the Probate Court for the county of Hampshire on July 29, 1938, by the trustee under a will, for instructions.

A decree was entered following a hearing by *Cook*, J.

*E. L. O'Brien*, for the respondents Friele and others.

*F. E. Tuit, 2d*, for the respondent Cooley-Dickinson Hospital.

Cox, J.   By his will dated January 23, 1933, Chauncey H. Pierce, after providing for the payment of his debts, funeral expenses, the furnishing of markers and lettering on monuments, and for the care of certain cemetery lots by means of a specific bequest, made five bequests of specific sums and gave the residue of his estate to the petitioner in trust, however, to pay annuities upon certain express conditions to four designated persons.   The only other provisions in the will, aside from the naming of the executor, are as follows: "The principal of my estate may be drawn upon

in any one year, if necessary, to make the annuity payments. All bequests are made free of inheritance taxes. After the termination of all the Annuities by death or otherwise the residue of my estate I give as follows: To the Cooley-Dickinson Hospital in Memory of my Mother Florilla Cooley Pierce." The petitioner alleges that one of the annuitants has died; that each year during the term of the trust the net income from the trust fund has been more than sufficient to pay the annuities, so that the income has accumulated to a substantial amount; that the respondent hospital has demanded of the petitioner payments of all accumulated income and of all current income in excess of the amount necessary to pay the annuities, and contends that it is entitled to all future surplus income not required to pay the annuities. The petitioner asks to be instructed as to the distribution of accumulated income and also as to the distribution of current and future income not required to pay the annuities. The petition was taken for confessed against the respondent executor of the deceased annuitant. The other annuitants are before the court and have appealed from the decree of the Probate Court, which authorized and directed the petitioner to pay to the respondent hospital the accumulated surplus income after deducting therefrom the legal expenses of this proceeding, taxes, trustee's compensation and expenses of administering the trust, and also directed that hereafter all surplus income, if any, in the hands of the petitioner on the thirty-first day of January in each year, after payment of the annuities provided for in the will for the twelve months period prior thereto and the expenses of administering the trust "shall be paid by the petitioner annually to the Cooley Dickinson Hospital. This decree shall not be deemed to authorize any future payment to said Hospital out of the principal of the trust." A stenographer was appointed to take the testimony but there is no report of the evidence. In the decree itself, signed by the judge, after the preliminary recitals, which are not material to the issue before this court, the following appears: "After a full hearing and arguments of counsel and consideration thereof, the court doth find that it was the intention of the testator,

as evidenced by his will, that each year after payment of the annuities provided for therein the remaining surplus income should be paid to the Cooley Dickinson Hospital and that the surplus income not heretofore used for payment of annuities and accumulated since the death of the testator amounts to $29,681.07." This is followed by the order and decree as to the disposition of the surplus and future income, as hereinbefore described.

The Probate Court had jurisdiction in equity of the petition. G. L. (Ter. Ed.) c. 215, § 6, as amended by St. 1937, c. 257. *Burroughs* v. *Wellington*, 211 Mass. 494, 496. See *School Committee of Winchendon* v. *Selectmen of Winchendon*, 300 Mass. 266. It is a rule of equity practice that where the evidence is not reported the only questions open upon the appeal are whether the final decree was within the scope of the bill and was supported by the facts found. The findings of fact made by the trial judge must be accepted as true unless the specific facts stated are necessarily inconsistent with the general conclusions reached. *Marcus* v. *Richardson*, 299 Mass. 11, 13, and cases cited. With respect to the crucial issue before the court the judge made a finding in the decree itself (see *Maguire* v. *Bliss*, *ante*, 12, 13) that "it was the intention of the testator, as evidenced by his will, that each year after payment of the annuities provided for therein the remaining surplus income should be paid to the Cooley Dickinson Hospital." The only other finding that he made was as to the amount of surplus income not used for the payment of annuities that had accumulated since the death of the testator. In other words, the sole basis for the judge's determination as to the intention of the testator is to be discovered by an examination of his will. This being so, it is the duty of this court to examine this instrument and interpret it in accordance with its own judgment. As was said in *Malden Trust Co.* v. *Brooks*, 291 Mass. 273, at page 279, "And so far as the findings of the probate judge were based on written instruments . . . we are in as favorable a position to reach conclusions as was the probate judge and we do so unaffected by his conclusions." The parties have not

contended that the surplus income that has accrued is not a part of the residuary estate. See *Weeks* v. *Pierce*, 279 Mass. 108, 118. The respondent hospital states in its brief that "The fundamental question presented is whether this is a 'proper case' where the court may terminate in part a testamentary trust before the exact time fixed by the testator for its termination under the strict literal wording of the will."

"There is no doubt of the power and duty of the court to decree the termination of a trust, where all its objects and purposes have been accomplished, where the interests under it have all vested, and where all parties beneficially interested desire its termination. Where property is given to certain persons for their benefit, and in such a manner that no other person has or can have any interest in it, they are in effect the absolute owners of it, and it is reasonable and just that they should have the control and disposal of it unless some good cause appears to the contrary." *Sears* v. *Choate*, 146 Mass. 395, 398. *Weeks* v. *Pierce*, 279 Mass. 108, 116. In accordance with this principle the court has terminated trusts where the trustees held upon a simple trust and the plaintiff was the absolute equitable owner of the fund and the income, *Sears* v. *Choate*, 146 Mass. 395, 398; where the intention of the testator in regard to conditions "now existing" did not clearly appear and the trust was terminated in part, *Williams* v. *Thacher*, 186 Mass. 293, 300; where two thirds of the income of the trust fund were payable to a theological school, one third was payable to an individual for life and upon her death, on conditions which had been performed, the trustees were to pay the residue to the school, and where the school and the individual had agreed that the principal of the trust fund should be divided into three equal parts, two of which should be conveyed to the school and the other should continue to be held in trust for the individual's benefit for life, and then go to the school, *Welch* v. *Episcopal Theological School*, 189 Mass. 108.

On the other hand, this court has steadfastly adhered to the rule that the intention of the creator of a trust should be respected: where "It was the intention of the testator

that there should be one trust fund until the death 'of the longest liver of' his 'children,' and that no partition should take place until that time arrived. Under the rule which obtains here this intention of this testator will be carried into effect, certainly where others interested in the matters here in question (namely, the partition of the trust fund) do not consent to its termination," *Dunn* v. *Dobson*, 198 Mass. 142, 147; where "The trust cannot be terminated now nor at any time earlier than that fixed by . . . the agreement and will so far as they become pertinent. The trust was valid when established. Its purposes have not been accomplished. There is no impracticability in fact or in law in the further and complete execution of the trust according to its terms. A definite time has been fixed for its termination. It would not be terminated even upon the request of all parties in interest," *Forbes* v. *Snow*, 245 Mass. 85, 93, and cases cited; where the testator fixed the time for the termination of the trust and for the disposition of the property held thereunder, as at the death of the life beneficiary, *Old Colony Trust Co.* v. *Rhodes*, 299 Mass. 390, 396. See *Boyden* v. *Stevens*, 285 Mass. 176, 180. In the case of *Abbott* v. *Williams*, 268 Mass. 275, one article of the will in question that established a trust read as follows: "Upon the decease of all the annuitants herein mentioned, . . . I direct my said Trustees and their successors to pay over and convey all the trust funds and estate of every kind then in their hands to my legal heirs and representatives . . . ." After all but three of the annuitants had died, the trust fund was nearly five times as large as was necessary to pay the stated annuities. The Probate Court found that a principal sum of $75,000 was adequate for the purpose of paying the three remaining annuities and ordered a distribution of all the net trust estate in excess of this amount. But this court said, at page 283: "In the twenty-eighth article of the will the testator fixed the date of the death of the last annuitant named therein as the time when the trust estate should terminate. There is no provision in the will indicative of a purpose that it should end at an earlier date. No sufficient reason appears for

termination of the trust as to a part of the estate now. The testator's expressed intention must be controlling."

The respondent hospital points out that the English rule is different, citing the case of *Harbin* v. *Masterman,* [1896] 1 Ch. 351, 362, where it was held that although according to the strict language of the will in question, there was no doubt that there was no jurisdiction in the court to order the residuary estate to be distributed until after the death of the annuitant, nevertheless the court had power to "let the residuary legatees have what is theirs, subject to the setting aside of a sufficient sum for the payment of the annuities." The court had ordered that a substantial sum in Consols be set apart to pay the annuity, and the court said: "But it is inconceivable that she will not be paid her annuity in full in any case, except the insolvency of the country — and that is a contingency which the Court never contemplates." This decision was rendered in 1895. See *Berry* v. *Geen,* [1937] 1 Ch. 325, 334. In the case of *Saunders* v. *Vautier,* 4 Beav. 115, decided in 1841, it was held that where a legacy is directed to accumulate for a certain period, or where the payment is postponed, the legatee, if he has an absolute, indivisible interest in the legacy, is not bound to wait until the expiration of that period but may require payment the moment he is competent to give a valid discharge. In *Claflin* v. *Claflin,* 149 Mass. 19, the trust provided by the will in question contained a provision that a son should be paid certain sums when he arrived at the ages of twenty-one, twenty-five, and thirty years. When the son became twenty-one years of age he filed a bill to terminate the trust. Field, J., in the opinion referred to the English cases, including *Saunders* v. *Vautier,* and said at page 23: "The decision in *Broadway National Bank* v. *Adams,* 133 Mass. 170, rests upon the doctrine that a testator has a right to dispose of his own property with such restrictions and limitations, not repugnant to law, as he sees fit, and that his intentions ought to be carried out unless they contravene some positive rule of law, or are against public policy. The rule contended for by the plaintiff in that case was founded upon the same considerations

as that contended for by the plaintiff in this, and the grounds on which this court declined to follow the English rule in that case are applicable to this, and for the reasons there given we are unable to see that the directions of the testator to the trustees, to pay the money to the plaintiff when he reaches the age of twenty-five and thirty years, and not before, are against public policy, or are so far inconsistent with the rights of property given to the plaintiff that they should not be carried into effect." In our opinion the same considerations that prompted the court in *Broadway National Bank* v. *Adams*, and in *Claflin* v. *Claflin* to decline to follow the English rule should prompt us to decline to follow the rule laid down in *Harbin* v. *Masterman*. As was said in *Claflin* v. *Claflin*, at page 23, "In the case at bar nothing has happened which the testator did not anticipate, and for which he has not made provision. It is plainly his will that neither the income nor any part of the principal should now be paid to the plaintiff. It is true that the plaintiff's interest is alienable by him, and can be taken by his creditors to pay his debts, but it does not follow that, because the testator has not imposed all possible restrictions, the restrictions which he has imposed should not be carried into effect." Although in the case at bar this surplus income will eventually become a part of the residue, it does not follow that it should be distributed at this time. As was said in *Young* v. *Snow*, 167 Mass. 287, at 288, "While the will vests the fund in the testator's four children, it does not give them an absolute estate and then impose restrictions and conditions repugnant to the estate, but gives an ownership qualified by the directions that the property is to remain for a time in the hands and control of the executors as trustees. Whether the testator made these provisions for one purpose or another is immaterial, since he had the right to order as he did. Under our decisions such provisions are not void, and are to be carried out. *Claflin* v. *Claflin*, 149 Mass. 19."

It follows that the decree of the Probate Court is reversed, and the trustee is instructed that the surplus income, over and above the amount necessary to pay the

annuities, is to be retained by it until the termination of all the annuities by death or otherwise, at which time the residue of the estate is to be paid to the respondent hospital.

*Ordered accordingly.*