THE NATIONAL SHAWMUT BANK OF BOSTON & another, trustees, *vs.* ADDA LOUISE MOREY & others.

Suffolk.     April 3, 1946. — December 3, 1946.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, & SPALDING, JJ.

*Declaratory Judgment. Probate Court,* Declaratory relief, Judicial discretion, Appeal. *Equity Jurisdiction,* Declaratory relief, Judicial discretion. *Devise and Legacy,* Intestacy.

Generally, in declaratory procedure, whether originating in a statute or developed by the courts, there is expressly or by implication reserved to the court power in its discretion to decline purely declaratory relief: the existence of such discretion is essential to the successful use of the procedure. Per QUA, J.

On an appeal with a report of evidence from a decree of a Probate Court declining in the exercise of discretion to enter a declaratory decree, it was open to this court to determine the question of discretion upon the law and the evidence, giving some weight to the action of the trial judge.

The question of discretion in a suit in equity for a declaratory decree interpreting a written instrument must be decided upon the peculiar facts of each case.

Upon facts respecting a testamentary trust which was to continue until the death of the last survivor of a number of life beneficiaries, when the principal was to be distributed in part to the testator's "heirs at law," a Probate Court, at a time when two of the life beneficiaries were still living and the time for distribution might be many years distant, properly declined in the exercise of discretion to enter a declaratory decree determining whether the "heirs" were to be determined as of the time of the testator's death or as of the time of distribution.

Under a provision of a testamentary trust of all "the rest, residue and remainder" of the testator's estate expressly directing that ninety per

cent of any balance of income periodically remaining after satisfying requirements of specified payments to life beneficiaries should be paid to certain beneficiaries until termination of the trust upon the death of the last survivor of the life beneficiaries, when a specified distribution should be made of the "then remaining sum of the said trust," but making no express provision as to disposal of the periodically remaining ten per cent, there was no intestacy as to such ten per cent and it should be added periodically to the principal of the trust for distribution upon the termination thereof.

PETITION IN EQUITY, filed in the Probate Court for the county of Suffolk on December 11, 1944.

The case was heard by *Dillon*, J.

*R. M. Robinson*, (*A. P. Schmidt* with him,) for the trustees under the will of Edwin Morey.

*M. A. Shattuck*, (*S. MacMillan* with him,) for Richard T. Morey, Charlotte A. Stevens, Jeannette M. Collins and Virginia Morey, respondents.

*C. S. Chaplin* of Maine, (*F. D. Marshall* of Maine, with him,) for Ella L. Morey, individually and as executrix under the will of Charles E. Morey.

*A. W. Wunderly*, for guardian ad litem.

*H. S. Davis*, for National Shawmut Bank, executor of the will and trustee under the deed of Walter G. Morey.

QUA, J.  This petition in equity is brought under § 6B inserted in G. L. (Ter. Ed.) c. 215, by St. 1935, c. 247, § 1, by the trustees under residuary clauses of the will of Edwin Morey, of Boston, who died September 21, 1907, for a declaratory judgment interpreting that part of the will which provides that at the decease of the last survivor of a number of life beneficiaries the trustees shall pay over "the then remaining sum of the said trust" in part to a certain charity and the balance to the testator's "heirs at law."

The question which the petitioners in their petition and most, but not all, of the respondents in their answers ask the court to decide is the timeworn question whether "heirs" meant those who were such at the death of the testator or those who would be such if he died immediately after the death of the last surviving life beneficiary — in other words, whether the remainder interests in the trust are vested or contingent.

The peculiarity of this case is that the time for distribution has not yet arrived, since two of the life beneficiaries, the testator's widow now eighty-five years of age and a grandson now fifty-eight years of age, are still living. Many years may yet elapse before the remainders become distributable. It is for this reason, no doubt, and because the courts ordinarily refuse under their general equity jurisdiction to give instructions to fiduciaries as to possible future duties which they are not presently required to perform that the petitioning trustees rely upon the statute to secure a declaration as to the nature of the remainder interests. See *Bullard* v. *Attorney General*, 153 Mass. 249, 250; *Hill* v. *Moors*, 224 Mass. 163, 165; *North Adams National Bank* v. *Commissioner of Corporations & Taxation*, 268 Mass. 42, 45–46; *Boyden* v. *Stevens*, 285 Mass. 176, 180; *Wellesley College* v. *Attorney General*, 313 Mass. 722, 729.

Some of the respondents in their answers raise a second question. The will provides that in case the income from the trust fund shall be more than sufficient to pay specified sums to life beneficiaries, so that a balance of income remains at the end of any year, the trustees shall pay ninety per cent of such balance to certain beneficiaries until the deaths of all the named beneficiaries, when the trust shall cease and the trustees shall pay over "the then remaining sum of the said trust" as hereinbefore stated. In many years the income of the fund has been more than sufficient to pay to life beneficiaries the particular sums specified, and ninety per cent of the balance has been paid according to the will. The remaining ten per cent of the balance of income, amounting to many thousands of dollars, for the payment of which during the continuance of the trust the will makes no express provision, has been retained by the trustees and added to the principal. The respondents just mentioned contend that this remaining ten per cent of income was intestate property, and that it should have been paid to the testator's heirs instead of being retained in the trust.

The Probate Court entered a decree wherein it declined,

in the exercise of its discretion, to pass upon the question as to which the petitioners sought a declaratory judgment or decree, and wherein it further decreed that the issue as to the disposition of the ten per cent of the balance of income "is res judicata" because of the former allowance, after hearing and adjudication, of accounts of the trustees, all showing the transfer of this undistributed income to the principal of the trust. The petitioners and various respondents appeal. The record includes a report of the evidence.

We interpret the decree as a final decree (1) refusing on discretionary grounds to make a declaratory decree as to the nature of the remainder interests under the trust and (2) deciding that, because of previous adjudications on trustees' accounts, the ten per cent of the balance of income in question has already been determined to have remained part of the fund and not to have become distributable as intestate property. We reach this conclusion upon consideration of the substance of the decree and in spite of the fact that the decree purports to reserve for future consideration "the matter of the allowance of costs and expenses to be paid out of the trust estate as prayed for by the several respondents." See *Lucas* v. *Morse*, 139 Mass. 59; *Mulloney* v. *Barnes,* 266 Mass. 50, 53–54; *Untersee* v. *Untersee*, 299 Mass. 417, 424; *Potter* v. *Mullaney*, 301 Mass. 497, 499–500.

1. We deal first with that part of the decree refusing to declare whether the rights of distributees of the remainder in the trust fund are vested or contingent.

There is no doubt in our minds that the Probate Court had jurisdiction to make the declaration. There are in some decisions of this court statements or intimations to the effect that in general equity jurisprudence the court has no jurisdiction to enter a merely declaratory decree upon which no further relief is granted. *Austin* v. *Bailey*, 163 Mass. 270. *Hanson* v. *Griswold*, 221 Mass. 228, 234. *Hill* v. *Moors*, 224 Mass. 163. *Whiteside* v. *Merchants National Bank*, 284 Mass. 165, 170. However, in *Corkum* v. *Clark*, 263 Mass. 378, 390, purely declaratory relief as to the matrimonial status of the plaintiff was granted in very special circumstances without the aid of any statute, and something of a

more or less similar nature was done in *Baylies* v. *Payson*, 5 Allen, 473, 489–490. In other jurisdictions the view has been taken that there is no lack of equity jurisdiction to grant purely declaratory relief, and that the refusal of courts to grant it is due to established views of expediency and not to lack of power. See *Aetna Life Ins. Co.* v. *Haworth*, 300 U. S. 227, 240. *Guaranty Trust Co.* v. *Hannay & Co.* [1915] 2 K. B. 536, 557–574. Whatever may be the power of an equity court in the absence of statute, it is plain that § 6B, under which this suit is brought, conferred plenary power upon the Probate Court. See *Merchants Mutual Casualty Co.* v. *Leone*, 298 Mass. 96, 99. That section reads in part, "A suit in equity in a probate court shall not be open to objection on the ground that a mere judgment, order or decree interpreting a written instrument or written instruments is sought thereby, and in such a suit said court may make binding determinations of right interpreting the same, whether any consequential relief is or could be claimed or not." This section was repealed by St. 1945, c. 582, § 3, and in common with other statutory provisions respecting declaratory judgments in other courts, has been superseded by the more comprehensive provisions of G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1. But by a saving clause in the repealing act, § 6B continues in force as to proceedings commenced, as the present proceeding was, before November 1, 1945. This statute is constitutional when properly applied to appropriate cases. *Whiteside* v. *Merchants National Bank*, 284 Mass. 165. It should be construed liberally, as we are expressly enjoined to construe the successor statute. G. L. (Ter. Ed.) c. 231A, § 9, as inserted by St. 1945, c. 582, § 1. It extends to the interpretation of wills and contains no express limitations as to the kinds of questions on interpretation of wills which may be determined under it. Indeed, interpretation of wills has been from the beginning of the development of declaratory jurisdiction one of the principal fields in which that jurisdiction has operated. See Borchard, Declaratory Judgments (2d ed.) 699, et seq.; Anderson, Declaratory Judgments, § 291; *McKay* v. *Audubon Society, Inc.* 318 Mass. 482.

. But although the Probate Court had jurisdiction in this case to declare the nature of the future interests under Edwin Morey's will, even long before those interests should come into possession, it does not follow that the petitioners were entitled to a decree as a matter of right. Generally, in declaratory procedure, whether originating in a statute or developed by the courts, there is expressly or by implication reserved to the court power in its discretion to decline purely declaratory relief. Section 6B, under which this proceeding is brought, expressly recognizes this reservation. So also do the rules of this court and of the Superior Court promulgated in accordance with G. L. (Ter. Ed.) c. 213, § 3, Tenth A. Equity Rule 36, adopted February 1, 1943, 313 Mass. 787. Rule 101 of the Superior Court (1932). *Merchants Mutual Casualty Co.* v. *Leone*, 298 Mass. 96, 99. Although § 3, Tenth A, was so changed by the new act, St. 1945, c. 582, § 2, read in connection with G. L. (Ter. Ed.) c. 231A, § 1, inserted by St. 1945, c. 582, § 1, that the procedure in this court and in the Superior Court now rests directly upon c. 231A and not upon rules of court, yet by St. 1945, c. 582, § 4, the existing rules are continued in effect until changed, and the new statute, G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1, recognizes in § 3 that the court "may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceedings or for other sufficient reasons." It seems to us that the existence in the court of discretion of this kind is essential to the successful use of declaratory procedure. Without it the court and the public would have no really effective protection against the presentation of moot cases or of cases involving only remote contingencies, attempts to use the courts for purposes of giving legal advice or for answering questions as to which no reasonable doubt could exist, and the fomenting of unnecessary litigation. In *Gray* v. *Spyer*, [1922] 2 Ch. 22, at page 27, Lord Sterndale, speaking of declaratory judgments in a court which has had long experience with them, says, "Properly used, they are very useful; improp-

erly used, they almost amount to a nuisance." In the case before us the judge exercised his discretion against making any declaration as to the time of vesting of the remainders. This being a suit in equity, this court upon appeal ·will itself decide the question of discretion upon the law and the evidence, giving some weight, however, to the action of the trial judge. *Merchants Mutual Casualty Co.* v. *Leone,* 298 Mass. 96, 100. *Long* v. *George,* 296 Mass. 574, 579. *Boston* v. *Santosuosso,* 307 Mass. 302, 323, 353.

In determining whether the discretion of the trial judge was rightly exercised it becomes necessary to examine more closely into the facts shown by the pleadings and evidence, about most of which at least there appears to be no dispute. The book value of the principal of the trust estate at the time of the filing of this petition was $938,158.44. The testator died thirty-nine years ago, leaving his widow and three children surviving him. All of the testator's children have now deceased. Two of them left a child or children surviving them, who were grandchildren of the testator. There are now also great grandchildren and great great grandchildren. There may even be great great great grandchildren who may claim interests in the fund when the time for distribution arrives. There are two main lines of descent, one of which is in turn split into two parts and may be further subdivided. If the remainders are now vested, it is of course possible to determine in whom they are vested, but if they are contingent it is impossible to say at this time who the distributees will be, and quite possibly large portions of the fund will be distributable many years hereafter to persons as yet unborn. On the other hand, it appears that the corporate executor of the will of one of the children of the testator, which is also the trustee of a living trust created by the same child in his lifetime, is uncertain in both capacities whether the child had any remainder interest in the trust created by the testator which was an asset of the estate of the child or of the living trust and whether the tax authorities would be warranted in including the value of a vested remainder as a part of the taxable estate of the child. The personal

representatives of other descendants of the testator who were living at his death but who have since deceased are confronted with a similar problem. The living descendants of the testator also contend that it is important to them in planning to safeguard their own families and dependents and in making their own wills to know at the present time whether they hold vested interests or are only possible contingent remaindermen.

The question of discretion must be decided upon the peculiar facts of each case. In the case before us there are arguments both ways. Summarily stated, the arguments in favor of a present determination are those of convenience in the adjustment of taxes, in the making of wills, and in general that persons should know what their property rights are. The arguments against a present determination are that, in general, it is unwise for courts to decide the rights of persons unborn in the absence of a showing of some genuine and pressing necessity; that such persons cannot protect their rights themselves; that they have no voice in choosing those who are to protect them; that the representation of future interests by guardians ad litem is, or may be made, a burdensome charge upon the estate and is not always dependable; that at best the decision may not finally determine the particular persons who are to take, so that future litigation may still be necessary to establish further facts; that adoption of the theory that the mere existence of future unascertained interests commonly furnishes cause for a declaratory judgment would tend to foment litigation, to cause expense for counsel fees and otherwise which could frequently be avoided altogether by waiting until the time of distribution, and to deplete trust funds at the beginning to the detriment of disinterested income beneficiaries instead of at the end to the detriment only of those really interested in the controversy.

We think that in the case before us the arguments against a present determination outweigh those in favor of it. No pressing necessity for a present decision is shown. It does not appear that any loss can be avoided or any gain acquired by it. The corporate executor and trustee whose plight is

urged by the other parties as a principal reason for a present decision argues before us against such decision on the ground that its tax position might be worsened rather than bettered if it is now determined that it holds a vested estate, in that it would then be faced with the alternative either of immediately using up other assets to pay a tax on the remainder interest from which no present benefit can be derived or of giving a long term bond for double the amount of the tax and of anticipated interest thereon. See U. S. C. (1940 ed.) Title 26, §§ 925, 926. Nothing definite appears as to the tax position of other parties and certainly nothing showing any present emergency. It seems probable that any difficulty any of the parties might fear in preparing dispositions of his own estate could be obviated by the expedient of making his will in the alternative. Throughout the history of declaratory judgments courts have frequently declined to pass upon the interests of persons unborn or have stated that they would so decline in the absence of special reasons to the contrary. *Ackerman* v. *Union & New Haven Trust Co.* 91 Conn. 500. *New Britain Trust Co.* v. *Stanley*, 128 Conn. 386, 392. (Compare *Hill* v. *Wright*, 128 Conn. 12; *Wooster* v. *Union & New Haven Trust Co.* 132 Conn. 309.) *Norton* v. *Moren*, 206 Ky. 415, 431. *Matter of Suydam*, 138 Misc. (N. Y.) 873. (See *James* v. *Alderton Dock Yards, Ltd.* 256 N. Y. 298, 305.) *Lyman* v. *Lyman*, 293 Penn. St. 490, 496. *Straus's Estate*, 307 Penn. St. 454. *Quigley's Estate*, 329 Penn. St. 281, 294–295. *United States Fidelity & Guaranty. Co.* v. *Askew*, 183 Tenn. 209. *Bright* v. *Tyndall*, 4 Ch. D. 189. *Curtis* v. *Sheffield*, 21 Ch. D. 1, 3–4. *In re Staples*, [1916] 1 Ch. 322. Borchard, Declaratory Judgments (2d ed.) 413. See *Merchants Mutual Casualty Co.* v. *Leone*, 298 Mass. 96, 100–101.

We think this case distinguishable on this point from the recent decision in *McKay* v. *Audubon Society, Inc.* 318 Mass. 482. In that case the Probate Court exercised its discretion in favor of and not against a present decision, and this court, after holding that in that proceeding the trustees had a sufficient interest to enable them to appeal, said merely that since the answer to the question of con-

struction seemed "clear and there are advantages in a present decision, we think that in this case the discretion of the Probate Court was not improperly exercised by giving an answer." Indeed, upon a reëxamination of that case, the decision of the main issue seems to have been so clearly settled by the express language of the will itself that this court would naturally be very reluctant to create confusion by overturning an exercise of discretion which went little, if any, farther than to declare the obvious. In the case now before us not only did the Probate Court exercise its discretion against a present decision — a consideration not in itself decisive — but it has not been made to appear that the question of construction is susceptible of any ready answer by which the litigation can be terminated at once. The merits of the issue have not even been argued in this court. See also *Hendrick* v. *Mitchell, ante,* 155.

2. On the question of the disposition of the balance of ten per cent of the income remaining after making the payments from income specifically provided for in the will we think the case stands in a different position. This question is separate and distinct from the question whether the remainders in the principal of the trust fund are vested or contingent. This branch of the case is not concerned wholly or principally with declaratory relief. It involves not only an asserted present right to receive the accumulations of income which the trustees have hitherto added to principal but it involves also the constantly recurring question whether they shall continue to add the ten per cent of excess of income to principal or shall distribute it from time to time as intestate property. These are matters of immediate importance as to which the court could properly give instructions to the trustees quite apart from G. L. (Ter. Ed.) c. 215, § 6B, introduced by St. 1935, c. 247, § 1. Apparently under our law any party financially interested in the trust could request that the trustees be instructed in regard to these matters. *Healy* v. *Reed,* 153 Mass. 197. See Bogert, Trusts & Trustees, § 559. Compare *McAllister* v. *Elliot,* 83 N. H. 225. And it was proper to make the request in the form of a counterclaim. Rule 28 of the Probate Courts (1934). In

the court below no objection appears to have been made to this procedure, and the petitioning trustees have argued the point here and, it seems, desire a decision upon it.

As already stated, the Probate Court placed its decision with respect to this part of the case upon res judicata. Without deciding whether there was any error in this, we think that questions of some difficulty can be avoided, and that it will be simpler and more satisfactory if the point is decided upon the merits. Ninety per cent of the balance of income remaining after making the payments provided for earlier in the will was expressly disposed of by the terms of the trust. The remaining ten per cent was not; nor was there any express provision that it be added to principal. But the trust was of "All the rest, residue and remainder" of the testator's estate. The trustees were directed to "keep the property held under this trust invested in good, safe securities." The ten per cent of excess income was proceeds of trust property. There are no provisions for taking it out of the trust while the trust remains alive. There is a provision that upon termination of the trust the trustees shall pay over "the then remaining sum" to the charity and to the heirs at law of the testator as hereinbefore stated. The testator thus expressly provided for the time when his heirs should receive that interest in the trust fund which he intended them to have. We think he did not intend them to receive any of the trust property or its proceeds before that time and did not intend that there should be any intestacy as to any of the property or any of the proceeds of property that went into the trust. See *Anderson* v. *Harris, ante,* 101, 104–105, and cases cited. The trustees therefore rightly added the ten per cent of excess income to principal and should continue in the future to add the ten per cent of excess income, if any, to principal and should distribute it as part of the principal when the trust comes to an end. We think the case is governed on this point by *Brown* v. *Wright,* 168 Mass. 506, 509–510, rather than by *Abbott* v. *Williams,* 268 Mass. 275, 284–285. See *Brown* v. *Wright,* 194 Mass. 540, 544; *Lyman* v. *Sohier,* 266 Mass. 4; *Weeks* v. *Pierce,* 279 Mass. 108, 118–119; *Spring-*

*field Safe Deposit & Trust Co.* v. *Friele,* 304 Mass. 224; *Old Colony Trust Co.* v. *Treadwell,* 312 Mass. 214, 216; *O'Neill* v. *Connelly,* 312 Mass. 508, 511.

It follows from what has been said that the decree must be modified by striking out that part of it dealing with the transfer to principal of the ten per cent of excess income and substituting therefor an adjudication that this income has heretofore been properly added to principal and an instruction that the trustees should continue to add to principal ten per cent of any similar excess income hereafter accruing, and as modified the decree is affirmed.

The question arises whether costs and expenses of these appeals should be allowed out of the trust estate. We are unwilling to establish a precedent that a party who unsuccessfully seeks a declaratory decree is to have costs and expenses. But this case presents some special features. The question whether, in general, declaratory decrees would be given in the circumstances of this case has not been fully considered heretofore, and helpful briefs were furnished. Moreover, the case presents another issue upon which a decision has been made. The Probate Court may therefore make reasonable allowances for costs and expenses of these appeals, to be paid out of the trust fund, except to the trustees under the will of Edwin Morey, who must seek any allowance in their own accounting. *Ensign* v. *Faxon,* 224 Mass. 145, 147–148. *Gladstone* v. *Murray Co.* 314 Mass. 584, 592.

*So ordered.*