HELENA R. WOOSTER *v.* THE UNION AND NEW HAVEN TRUST COMPANY, TRUSTEE, ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued June 12—decided July 18, 1945.

*Leonard M. Daggett* and *Stanley Daggett,* for the plaintiff.

*Raymond E. Hackett,* with whom was *Charles D. Lockwood,* for the defendants Franklin S. Jerome et al.

*James E. Wheeler* appeared for the named defendant.

*Richard Hooker, Jr.,* appeared for Clara Merrill.

MALTBIE, C. J.  William H. H. Wooster, late of Seymour, had several children, including three unmarried daughters.  The plaintiff, one of these daughters, is seeking a declaratory judgment as to the extent of a power of appointment given to her in a trust instrument which he executed and in which the named defendant was appointed trustee, and as to the disposition which should be made of certain real estate which he also deeded to the trustee.  Under the instrument, dated December 26, 1916, Mr. Wooster delivered personal property of considerable value to the trust company to be held by it in trust primarily for the benefit of his wife and his three unmarried daughters, the plaintiff, Mabel and Louise.  Both Mr. Wooster and his wife died and, under the terms of the instrument, the three daughters became entitled to receive the income of the trust in equal shares.  By the provisions of the trust instrument, at the death of any of the daughters, her share of the income was to be paid to such persons as she might appoint in the manner designated in the agreement or, lacking an effective appointment, to the issue of the deceased or, lacking such issue, to the surviving daughters, their appointees or their issue; the trust was to terminate at the death of the last surviving daughter, if no issue of any one of them were then living; but, if there were such issue, it was to continue for a further period of twenty-one years, unless the last survivor of such issue died before the expiration of that time, in which event the trust would terminate at his death; whenever it terminated, the trustee was to pay or transfer the principal of the

fund to such persons as the daughters might appoint or, in default of appointment, to their issue, if any, in compliance with certain directions contained in the agreement.

Louise died in 1930 without having exercised the power of appointment given her, and leaving no issue. Mabel died in 1943, and in her will, in purported exercise of the power of appointment given in the agreement, she provided that, should the plaintiff survive her, another sister, Clara, or, should the latter predecease the testatrix, her issue, should receive one-half the income of the trust which the testatrix would have been entitled to receive had she lived, and she directed that, at its termination, "one-half of the principal fund and its accumulations with respect to which I shall, at the time of my death, have the right" to an appointment should be paid to Clara or her issue. The principal questions propounded in the reservation concern the extent of the power of appointment which the plaintiff has with respect to the principal of the trust fund. The provisions of the trust instrument directly involved in determining these questions are printed in the footnote. [1]

---

[1] *Article Fourth.* (d) From and after the death of any one of my daughters during the period of this trust I direct my trustee to pay such income as such deceased daughter would have been entitled to receive if living, in such manner and to such person or persons as she may direct and appoint in the exercise of the right and power of direction and appointment hereinafter given her in Article Seventh, and failing any such direction and appointment, to her issue surviving at her death, in equal shares, and failing any such direction and appointment and any such issue surviving at her death, to divide and pay her share of income equally to and among the others of my said daughters, or, as the case may be, their appointees, or their issue in equal shares *per stirpes.*

*Article Sixth.* Upon the termination of this trust in any one of the manners provided for in Article Fifth above, my trustee shall pay over, transfer and convey, free and discharged of all trust, one third of the principal fund and its accumulations as each

The plaintiff herself anticipates a question as to the propriety of our now giving the judgment she seeks. The only persons who could be adversely affected but who, or the representatives of whose estates, are not parties to the action are future issue of the plaintiff whose birth, from any practical standpoint, is highly improbable. On the other hand, the plaintiff is entitled to know the scope of the power of appointment given her in order to guide her in her future conduct; and it is stipulated that a present determination of the questions will resolve substantial doubts as to the taxability of portions of the principal of the fund under the federal inheritance tax laws. Under the circumstances, we have decided to answer the questions

of my said three daughters may indicate, direct or appoint by or in any last will or codicil, wherein such daughter may act upon and exercise or attempt to exercise the right and power of direction and appointment provided in Article Seventh hereof. Should any one of my said three daughters fail to exercise such right and power of direction and appointment and leave no paper purporting to be a last will or codicil and attempting to exercise such right and power, my trustee shall pay over, transfer and convey such daughter's one third share in the principal fund to her issue then living, in equal shares, and failing any such issue, to the issue then living of the others of my said three daughters, in equal shares *per stirpes*, and free and discharged of all trust.

*Article Seventh.* For full consideration I hereby give and grant to each and everyone of my said three daughters, Louise, Mabel and Helena Ruth, a full power of appointment and direction as to the payment by said trustee of any and every part or portion of the income of said trust fund which said daughter, if she had continued to live, would have been entitled to receive during the existence of this trust, and I also give and grant like full power of appointment and direction to each and every one of my said three daughters as to the distribution, payment and delivery by my trustee of any part of the principal of said trust fund which the issue of such daughter would have been entitled to receive except for the exercise of such power of appointment and direction; but in case of the exercise of any such power of appointment to any extent, the issue of any daughter so exercising such power shall not otherwise be entitled to receive any part of said trust fund, and this provision applies equally to income as well as principal.

concerning the scope of the plaintiff's power of appointment. *Sigal* v. *Wise*, 114 Conn. 297, 302, 158, Atl. 891; *Hill* v. *Wright*, 128 Conn. 12, 19, 20 Atl. (2d) 388; *New Britain Trust Co.* v. *Stanley*, 128 Conn. 386, 392, 23 Atl. (2d) 142. The other question asked in the reservation arises out of a deed of land in Seymour, on which was the family homestead, made by Mr. Wooster to the trustee. His wife and, after her death, the three unmarried daughters were given a right of occupancy during their lives and the life of the survivor. The deed contained a provision that, after the death of the wife, the trustee, upon the written request "of a majority of my said three daughters then living," should sell the property and make the proceeds a part of the trust fund created under the instrument described above. We are asked whether the plaintiff, as sole survivor of the three daughters, has the right, by written request, to require the sale of the property. As there is no intimation in the record that she proposes or desires to seek such a sale, no need to answer this question appears, and our decision might well be purely academic. We must, therefore, decline to consider it.

The trust instrument, in article fourth (d), provides for payments of income in a manner which Mr. Wooster might well have believed reasonably adequate to bring about a complete disposition of it. Each daughter is given a power of appointment as regards all the income which she "would have been entitled to receive if living"; as the parties before us agree, that power would include the right to dispose not only of the third part to which she was primarily entitled but also of such part as might come to her when one or both of her sisters died without having exercised the power given them, and without issue. Article sixth, in its provisions for the disposal of the principal at the

termination of the trust, gives to each daughter a power of appointment only as to one-third of the fund; and it then goes on to provide that, should any daughter fail to exercise the power of appointment given her, the trustee should pay one-third of the principal to her issue living at her death or, if she left none, to the issue of the other daughters then living, in equal shares per stirpes. If none of three daughters has issue and if the rights to dispose of the principal are governed by this article alone, the chance of intestacy as to at least a part of the principal is greatly increased; for, should any one of them fail to exercise her right to appoint the person or persons to receive the whole or any part of one-third of the principal, as in fact Louise did as to all her share and Mabel did as to half her share, that third or so much thereof as was not included in the portion as to which the power to appoint was exercised would necessarily be undisposed of. That the unmarried daughters might die without issue was a contingency evidently very much in the mind of Mr. Wooster. The terms of the instrument indicate that he intended to make a disposition of the fund which would in any reasonable contingency be complete. Indeed, it would be highly unlikely that he would want any part of the fund to fall back into his estate at the termination of the trust, which might occur only at the end of twenty-one years after the death of the last survivor of the three daughters.

If, with these considerations in mind, we turn to article seventh, we find that there Mr. Wooster's mind was definitely centered upon the powers to appoint which he had given the daughters, and upon them alone. He not only restates the grant of powers he has previously given, but he very emphatically defines their scope. The power given each daughter as regards income includes "any and every part or portion"

which she "would have been entitled to receive during the existence" of the trust. As regards the principal he gives "to each and every one of my said three daughters" "full power of appointment and direction" as to the disposition "of any part of the principal of said trust fund which the issue of such daughter would have been entitled to receive except for the exercise of such power of appointment and direction." Here, manifestly, Mr. Wooster was thinking beyond the third of the principal as to which, in article sixth, he had given each daughter a power of appointment; indeed, had he intended to restrict the power to that one-third, he could have so stated in much simpler language than that which he in fact used. When he included the part of the principal "which the issue of such daughter would have been entitled to receive" except for the exercise of the power, he certainly could not have intended that, in order to exercise the power, a daughter must have issue; that would be directly counter to the clearest implication of article sixth, where it is provided that, should any daughter not have exercised the power at her death and leave no issue of her own, the portion of the principal as to which she was given the power should be paid to the issue of the other daughters, if any. Nor is it reasonable to restrict reference to the part of the principal which the issue of a daughter "would have been entitled to receive" had the power not been exercised to the third part as to which each daughter is given a primary power of appointment; had Mr. Wooster intended no more he would hardly have adopted so circumlocutory a method of statement. What was in Mr. Wooster's mind in this provision was that each daughter should have the power to appoint as regards all that portion of the principal which her issue, should

she have any, might otherwise receive at the termination of the trust.

There is no essential inconsistency between the reference in article sixth to the exercise by each daughter of the power to appoint as to one-third of the principal and the provisions of article seventh, discussed above. In the former, Mr. Wooster was immediately concerned with the disposition of the principal of the fund, and his thought went no further than to provide for each daughter the primary right to dispose of a third of it, and for the disposition of that third should she fail to do so. In article seventh, he is dealing expressly with the scope of the power of appointment given to each daughter and clearly intends to include within it, in addition to the one-third specifically referred to in Article Sixth, such further portions as would pass to her issue, if she had any.

The plaintiff has, then, the power of appointment over one-third of the principal which is primarily given to her. As Louise died without making any appointment and leaving no issue, the issue of Mabel and of the plaintiff, had there been any, would have succeeded to the right to the third of the fund over which Louise had the power of appointment, in equal shares per stirpes; and so the plaintiff acquired, on Louise's death, the right to appoint as regards an additional sixth of the fund. The plaintiff was alive at Mabel's death and consequently Mabel's exercise of the power to appoint Clara to receive "one-half of the principal fund" as to which Mabel had a power of appointment gave Clara the right to one-half of the one-third as to which Mabel was given the primary right to appoint and one-half of the one-sixth which represented one-half the portion of the principal as to which Louise had the primary right to appoint; that is, Clara acquired the right to receive one-quarter of

the principal; and the other quarter, the right to which would have vested in the issue of the plaintiff, if she had any, was within the plaintiff's power of appointment. The plaintiff has, then, a power of appointment as to one-third the principal primarily given to her, one-half of the one-third of the principal the appointment as to which was primarily given to Louise, and one-quarter of the principal as to which Mabel was entitled to make an appointment but which she failed to dispose of.

To questions A, B and C in the reservation, asking in effect whether the plaintiff has a power of appointment as regards the portions of the principal the primary right of appointment as to which was given to her sisters Louise and Mabel, we answer that the plaintiff has a power of appointment as to the one-half of the one-third the primary right to appoint which was given to Louise, and that, as Mabel exercised her power of appointment only as to one-half of the portions of the fund which she had the right to appoint, the plaintiff has also the power to appoint the remaining one-half of these portions, to wit, one-half of the one-third the primary right to appoint which was given to Mabel and one-half of the one-sixth the power to appoint which Mabel had acquired on the death of Louise; that is to say: the plaintiff has acquired the power to appoint all of the principal of the trust estate as to which her sisters Mabel and Louise had powers of appointment which they did not exercise, namely five-twelfths of the entire principal; question D requires no answer; and we decline to answer question E.

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.